[No. 11050.   Department One. — May 21, 1888.]

SIERRA MILLING, SMELTING, AND MINING
COMPANY, Respondent, v. HARTFORD FIRE
INSURANCE COMPANY, Appellant.

Fire Insurance — Warranty to Keep Watchman on Premises. — By a
policy of fire insurance on a mill, the insured warranted that during all
the time the mill remained idle it would employ a watchman to be in
and upon the premises insured night and day. At the time of the fire,
the watchman was on the premises connected with the mill, and a short
distance from but not actually in the building, and was engaged in
watching over the premises, and in a position where he had a better op-
portunity of seeing the property insured than if he had been in the mill
building. *Held*, that the warranty had not been broken.

Id. — Warranty to Furnish Water Supply — Adequacy of Means Fur-
nished. — The adequacy of the means employed by the insured for the
purpose of complying with a warranty to keep a supply of water on top
of the insured building, in readiness for immediate use, is one of fact for
the jury; and a finding that the warranty has been complied with will
not be held unsupported by the evidence, when it appears that a tank
about two feet deep and three feet square, fed by a small flume carrying
water, was located on the roof, but below the apex thereof..

Appeal from a judgment of the Superior Court of the
city and county of San Francisco, and from an order re-
fusing a new trial.

The facts are stated in the opinion.

*Gray & Haven*, for Appellant.

*H. A. Powell*, and *Arthur Rodgers*, for Respondent.

Foote, C. — This is an action to recover a loss upon a
fire insurance policy. Judgment was given for the plain-
tiff, and from that and an order denying a new trial de-
fendant appeals. It is contended by the appellant that
the jury found contrary to the instructions of the court,
and that the evidence before them went, without contra-
diction, to show that the plaintiff had violated at least
two of the warranties by which it was bound by the
terms of the policy, and that the verdict was, therefore,

against the evidence. The obligations thus imposed are to this effect: That during all the time the mill, which was part of the insured premises, remained idle, the plaintiff should employ a watchman to be in and upon the premises insured, day and night; that the plaintiff should keep a supply of water to be constantly on top of the mill and in readiness for immediate use whenever required. It is alleged in the answer "that no watchman was employed at or in charge of the premises at the time of said fire," and that "no water whatever was on top of the said mill at the time of said fire." The evidence is to the effect that a watchman was employed, whose duty it was to be at the premises insured, and to be a sentinel in looking after them at all times when the mill was idle, but when the fire took place he was in front of a blacksmith-shop belonging to the mill property, but not insured, which was about sixty-five feet from the mill, and that he was engaged at that time in watching over the insured premises, and was upon higher ground than that on which the mill stood, where he could have a better opportunity of seeing the mill, the outside machinery, and the tramway, which were all insured, than if he had been in the mill. So far as any negligence of the watchman is concerned in fulfilling his duty, it is clear that he was diligent in watching, and the only doubt which can be said to rest upon the plaintiff's compliance with the warranty is, whether by its terms it was bound to see that the watchman which it employed was either in the mill or immediately at it, or the tramway, or some other part of the property actually insured, or whether the warranty only bound the corporation to employ a proper watchman to be at and upon the premises whenever the mill was idle. To us it seems as if the corporation was only bound to employ a proper watchman to be in and upon the premises when the mill was idle. And when the watchman of a proper kind was employed to perform this duty, the plaintiff could not be held respon-

sible for his not being, at the time of the fire, actually in the mill, or beside it, or the tramway, or other insured property. Although the blacksmith-shop was not insured, it was, in point of fact, upon the premises to which the insured property belonged, and the watchman, posted where he was, was just as much in, upon, and in charge of the insured premises as if he had been in the mill. As we understand the issues raised by the pleadings, as to the warranties, the fact that the watchman was not in the mill or at the tramway when the fire occurred is not alleged to be a breach of the warranty, but this is claimed in the argument, and the fact that he was sixty-five feet from the mill, in front of a blacksmith-shop in full view of the insured property, is urged as proof that he was not on the insured premises when they burned, and therefore the contract of warranty was violated. We do not see any element in the acts of the corporation or the watchman which show any violation of the warranty, either through failure to employ the watchman, as required, or in his or the corporation's negligence in the performance of his duty as a sentinel. In this case, under the issues made by the pleadings, the inquiry addressed to the jury was, Did or did not the plaintiff have a watchman employed upon the premises insured at the time of the fire? It is not apparently questioned now by the appellant but what the watchman was so employed by the plaintiff, but the contention appears to be, that the warranty consisted in something else besides that which was claimed in the answer, viz., that the watchman, although employed to be in and upon the premises, was not there, and that therefore a breach of the warranty is asserted. To us this seems to be nothing more than an allegation of negligence upon the part of the watchman, and for this the plaintiff was not responsible under section 2629 of the Civil Code. The case of *Trojan Mining Co.* v. *Fireman's Insurance Co.*, 67 Cal. 28, is cited in support of the defendant's contention

that the fact of the watchman not being in the mill, or at it, or the tramway, or as is expressed by the learned counsel, "on the premises insured," was a breach of the warranty. But an examination of that case discloses the fact that there the issue upon which the case was tried was, whether or not the watchman was in fact in and upon the premises; here the issue as made by the pleadings is, Was he employed at or in charge of the premises at the time of the fire?

In *Wenzel* v. *Commercial Insurance Co.*, 67 Cal. 440, it was held upon the facts found that no one was in fact employed as a watchman of the premises, because the individual who it is claimed filled that position worked in the day-time two thousand one hundred feet from the insured premises, and at night slept nine hundred feet from them. Here it is clear that the watchman was employed to do what the policy required, and that at the time of the fire he was at the premises, being in front of the blacksmith-shop that belonged to and was substantially a part of the premises including the mill and tramway, which two last were insured, on duty as a sentinel, and in a more favorable situation to keep guard and watch over the premises insured than if he had been in the mill or on or near the tramway. We do not see, under the defendant's contention, how being in the mill would have satisfied the conditions of the policy any more than being a hundred feet off on the tramway, which was insured, or close up to the mill, where he would have been less likely to have seen the fire at its inception than where he was, sixty-five feet off, in front of the blacksmith-shop, and on higher ground than the mill itself. We think that upon this state of facts the warranty is shown to have been fully complied with.

As to the question made upon the matter of inadequate water supply kept on the top of the mill, it is evident that no place on the roof was prescribed under

the contract as being the particular place where the supply was to be located, and no specific amount of water was mentioned as being necessary to be so kept. Both these questions, therefore, were matters of fact to be ascertained by the jury upon the evidence before them, which has been done. The evidence was, that a tank about two feet deep and three feet square was located on the roof, but below the apex thereof, that it was fed by a small flume carrying water, and the jury were justified in believing that the tank was sufficiently supplied with water. At any rate, upon the testimony before them, we are not disposed to say that their verdict upon the question submitted to them was manifestly wrong, and against all the evidence.

As to the instructions given and excepted to, we must say that we had some difficulty in determining which of them precisely were excepted to, but finally, after much labor and consideration, we were enabled to identify them, and taking them and all the others together, although some of them perhaps were subject to the objections made, yet we think the law was fairly put before the jury, and they could not have been misled to the defendant's prejudice, and that was sufficient, and has been so held in numerous cases. (*People* v. *Tomlinson*, 66 Cal. 344.)

We perceive nothing in the record which shows a misrepresentation of the value of the property insured which should entitle the defendant to defeat the plaintiff's recovery. No prejudicial error appearing, we advise that the judgment and order be affirmed.

Belcher, C. C., and Hayne, C., concurred.

The Court. — For the reasons given in the foregoing opinion, the judgment and order are affirmed.

Hearing in Bank denied.