[No. 9496.   Department One.   August 23, 1911.]

SHOSHONE CONCENTRATING COMPANY, *Respondent*, v.

HAMBURG-BREMEN FIRE INSURANCE COMPANY,

*Appellant.*[1]

INSURANCE—FIRE INSURANCE—FORFEITURE—WATCHMAN— BREACH OF WARRANTY. A policy of fire insurance on a reconcentrating plant warranting that whenever the plant is idle, competent watchmen shall be employed and due diligence used to keep a continuous watch day and night in and immediately around certain parts of the plant, is violated and the policy forfeited, where, on shutting down, the insured employed the day and night foreman of a mill situated six to twelve hundred feet distant, paying each one dollar a day for watching intermittently while not engaged in their regular duties as foreman for which they received $5.50 per day from the other mill, and it appears that the night watchman at the time of the fire had no key and had never been in or near the premises.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered December 20, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an action on a policy of fire insurance. Reversed.

[1]Reported in 117 Pac. 500.

*Goodfellow, Eells & Orrick* and *Happy, Winfree & Hindman,* for appellant.

*Belden & Losey,* for respondent.

MOUNT, J.—The plaintiff brought this action to recover upon a fire insurance policy. The case was tried to the court and a jury. At the close of plaintiff's evidence, the defendant moved for a nonsuit, and again at the close of all the evidence defendant moved the court for a directed verdict, upon the ground that the evidence failed to show a compliance with the terms of the policy. These motions were denied. The jury returned a verdict in favor of the plaintiff, and the judgment followed. The defendant has appealed.

The following facts are not disputed in the case: On November 28, 1908, the defendant issued to the plaintiff an insurance policy for $2,000, on a reconcentrating plant owned by the plaintiff near the town of Sweeney, Idaho. The policy contained a clause as follows:

"It is warranted by the assured that, whenever any of the following named parts of the plant described in this policy, to wit: Concentrator or re-treating plant and machinery therein, are idle or not in operation for any cause whatever, competent watchmen shall be employed and due diligence used to keep a continuous watch both day and night in and immediately around said parts of the plant. If any of the above named parts are idle or not in operation for a period of more than thirty days without the written consent of this company, this policy shall be void."

At the time the policy was issued, the mill plant was in operation. On December 12, 1908, the mill was closed down, and defendant's agent informed the plaintiff that it would be necessary to obtain day and night watchmen. The plaintiff employed two watchmen, being the day and night foremen for the Shoshone Concentrating Company, a mill in operation located from six hundred to twelve hundred feet distant from the plaintiff's mill. It was agreed between the plaintiff company and these two men that the latter should attend to their

duties as foremen in the Shoshone company's mill, and while on duty there watch the idle plant of the plaintiff as their duties would permit.   It appears that they were not constantly employed, and that their duties called them out to the dump of the Shoshone mill about every hour, and that while there they were in view of plaintiff's mill and about six hundred to eight hundred feet away.  The watchman on day duty was given the keys to the plaintiff's mill, and went down there about four times per week and examined the mill to see that it was all right, that water was kept in barrels on each floor, and that buckets were handy thereto.    The night watchman never had a key.   One of them went within about one hundred and forty feet of the plaintiff's mill, upon several occasions.   The last one, however, on night duty had never been in or about the mill, and had never had a key thereto. The mill was destroyed by fire on May 1, 1909, about ten o'clock at night, while it was idle.   No one was about the premises at the time of the fire.   The night watchman was attending to his duties in the Shoshone mill when he heard of the fire.   At that time the fire was beyond control. · At the time the plaintiff employed these men, plaintiff's officers knew the duties of the men in the Shoshone mill, and also knew their opportunities for watching the plaintiff's mill and what time thereafter they gave to it.   Plaintiff agreed to pay them one dollar per day each for watching the mill.   They received $5.50 per day each for their time in the Shoshone mill.

It is apparent that the plaintiff did not comply with the provisions of the policy above quoted.   The policy provides that, whenever the plant is idle, "competent watchmen shall be employed and due diligence used to keep a continuous watch both day and night in and immediately around said parts of the plant."   Competent men were no doubt employed, but it was understood between them and the plaintiff that they were not to keep a continuous watch both day and night in and immediately around the plant, but that they were to watch intermittently at a distance from the premises,

estimated at from six hundred to twelve hundred feet there-from. The apparent object of the plaintiff was to evade its duties under the policy by making a show of compliance there-with. The diligence exercised was to evade, and not to comply with, the terms of the policy. We think the evidence shows that the men employed were competent watchmen, and that if they had been employed to keep a "continuous watch . . . in and immediately around" the premises, the property would not have been destroyed. But they were not so employed, and they did not so watch the property. The effect of the testimony of the officers of the plaintiff company was that the men were merely employed to keep an occasional watch from a distance, which they did, and which was the opposite of the duties required by the appellant. This breach of duty avoided the policy. *McKenzie v. Scottish Union & Nat. Ins. Co.*, 112 Cal. 548, 44 Pac. 922, and cases there cited. This was decisive of the case. There was no question of fact for the jury to pass upon, and the court erred in not granting the defendant's motions.

The judgment is therefore reversed, and the cause ordered dismissed.

DUNBAR, C. J., FULLERTON, and GOSE, JJ., concur.